BROWN, P. J.
—This action was brought to recover damages caused by the flooding of plaintiff’s lands by water, which leaked from a reservoir of the defendant, and the plaintiff had a verdicfc for $850.
Tiie cause of action set forth in the complaint appears to have included a claim for permanent injury to the land, or a depreciation in the value thereof, caused by the construction of the reservoir. The jury was, however, instructed by the court that the erection of the reservoir gave the plaintiff no right of action, and that the plaintiff’s right to recover was limited (1) to the injury to the rental or usable value of the land up to the commencement of the action, and (2) to such permanent injury thereto as had been caused by the leakage of water from the reservoir. This instruction was clearly correct.
*650 The property consisted of about four acres of land within the -corporate limits of the village of Rockville Center in Queens county. Upon it was a dwelling house and some outbuildings adapted to and used for raising poultry, which stood upon high ground, and were not affected by the water. The amount of land overflowed was about one-half an acre, which was lower than the land around it, and received the natural drainage therefrom. In the winter time, and in wet seasons, the water gathered there to some extent, and left the ground in a soft condition. The plaintiff testified that he did not cultivate any of the land, but held it for sale as a private residence. There were three occasions when the water leaked from the reservoir, viz., August, 1892, February, 1894, and November, 1894. Upon the first occasion the water stood on the land for two or three months, and on the latter occasion about eight weeks. On this occasion the highway in front of the property was flooded, and ingress and egress to the property was had over adjoining land. On none of these occasions were any crops destroyed, nor does the testimony show that plaintiff was put to any expense to repair any injury done to the land, or that there was any loss of use or rent. The only direct loss which the testimony discloses was that three- cherry and some smaller trees were killed.
From this summary of the testimony, we think it is clear that if the case had rested upon this evidence, the jury would have had no basis-from which to calculate the damages, and the case would have justified a verdict for a nominal sum only. The opinion of witnesses upon the question of damages was, however, offered and received, some of it over the defendant’s objection and exception. I quote substantially the whole of it as follows: From the testimony of the plaintiff: «
“ Q. What has been done with the property since they commenced to flood it?” A. I have been unable to do anything with the property as regards selling it. Q. What was the amount of -flooding per year to that property? A. $250. Q. Has the place any selling or rental value to-day? A. Mot in proportion to its value at all. It might be sold for farming purposes. Q. It has no rental value whatever for the purposes for which you hold it ? -(Objected to by the defendant as irrelevant, immaterial, and incompetent. Objection overruled. Defendant excepts.) A. Mo, .sir; it has not.”
John T. Rancie was called as a witness by the plaintiff, who, having testified that he was a real-estate agent in Rockville Center, and acquainted with the value of property there, was asked what the rental value of the property was before this reservoir was built, and what he estimated its rental value with the presence of the reservoir. These questions were admitted over the defendant’s ■objection and exception, and the witness answered that the rental before the reservoir was constructed was from $250 to $300 per year, and after it was constructed $100 per year. The same questions, against the defendant’s objection and exception, were asked of and answered by Lorenzo D. Simons, another real-estate agent, •called by the plaintiff. John H. Southard, a witness called for *651 the plaintiff, was also permitted, against the defendant’s objection, and exception, to testify that, “to fix up” the land flooded, it was -necessary to fill it up with earth, and raise it two or three feet, and that to make that improvement it would cost about $900. It further appeared, on cross-examination of the plaintiff, that for the year 1895 two acres of the land had been rented for agricultural purposes for five dollars per acre.
This testimony all falls into two classes: (1) That relating to permanent depreciation of value of the land arising from its proximity to the reservoir; (2) the cost of filing up the land to a height that would be above the height to which the water leaking from the reservoir had risen. The first class was clearly inadmissible. It was consistent with the allegation of the complaint, but the plaintiff plainly had no right of action for any depreciation in the value of his land arising from the erection of the reservoir. The court so instructed the jury, but it denied a motion made to strike out the testimony, and the jury were not told to disregard it. It is impossible for this court to hold that it may not have affected their judgment. Its admission, and the refusal to strike it out, were errors, for which the judgment may be reversed.
The judgment is reversed, and a new trial granted, with costs to abide the event.
All concur.